UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| DANA L.,<br>    Plaintiff,<br>  v.<br>KILOLO KIJAKAZI,<br>    Defendant. | Case No. 20-cv-06311-JSC<br><br>**ORDER RE: CROSS-MOTIONS FOR SUMMARY JUDGMENT**<br>Re: Dkt. Nos. 18, 21 |

Plaintiff seeks Social Security benefits for a combination of physical and mental impairments, including: multiple sclerosis ("MS"), emphysema, irritable bowel syndrome, poor vision, spinal stenosis, hepatitis C, chronic obstructive pulmonary disease ("COPD"), lumbar spine pain from degenerative disc disease with nerve involvement, diverticulitis, and history of bladder cancer and melanoma.[1] (Administrative Record ("AR") 22, 80, 221, 1359.) Pursuant to 42 U.S.C. § 405(g), Plaintiff filed this lawsuit for judicial review of the final decision by the Commissioner of Social Security denying his benefits claim. After carefully considering the parties' cross-motions for summary judgment, (Dkt. Nos. 18, 21), the Court concludes that oral argument is unnecessary, *see* N.D. Cal. Civ. L.R. 7-1(b), GRANTS Plaintiff's motion, DENIES Defendant's motion, and REMANDS for calculation and award of benefits.

## BACKGROUND

### A. Procedural History

Plaintiff applied for disability benefits under Title II of the Social Security Act on October 1, 2013, alleging a disability onset of August 21, 2009. (AR 198.) His application was denied

---

[1] All parties have consented to the jurisdiction of a magistrate judge pursuant to 28 U.S.C. § 636(c). (Dkt. Nos. 29, 30.)

both initially and on reconsideration. (AR 80-88, 90-104.) Plaintiff then requested a hearing before an administrative law judge ("ALJ") and a hearing was held before an ALJ in January 2016. (AR 16, 19-31.) The ALJ's decision found that Plaintiff is not disabled. (AR 19-31.)

Plaintiff requested review by the Appeals Council, with new evidence in support. (AR 1511-18, 1543-56.) The Council denied review. (AR 1-4.) Plaintiff sought federal court review and, in July 2018, this Court remanded the case for the ALJ to reassess Plaintiff's credibility and disability in light of the new evidence submitted to the Appeals Council. (AR 1441-55; *Dana L. v. Berryhill*, No. 17-cv-04146-JSC, Dkt. No. 18.)

In September 2019, after a new hearing on remand, the ALJ again found that Plaintiff is not disabled. (AR 1356-69.) At step one, the ALJ determined that Plaintiff did not engage in substantial gainful activity between August 21, 2009 (the alleged onset of disability) and December 31, 2013 (the date last insured). (AR 1358.) At step two, the ALJ found that Plaintiff's degenerative disc disease of the lumbar spine, COPD, and MS were severe medically determinable impairments that significantly limited his ability to perform basic work activities. (AR 1358-59.) The ALJ found that the other impairments Plaintiff alleged at various procedural stages were either not medically determinable impairments (emphysema, poor vision) or were not severe (diverticulitis, irritable bowel syndrome, tinnitus, hearing loss, urethral stricture, tobacco smoker, history of bladder cancer and melanoma, hepatitis C, and "other impairments"). (AR 1359.) At step three, the ALJ found that the severe medically determinable impairments did not meet or medically equal any impairment listed in 20 C.F.R. Part 404, Subpart P, Appendix 1.[2] (AR 1359-61). At step four, the ALJ determined that Plaintiff had the residual functional capacity ("RFC") to perform light work and that he could perform his past relevant work as an office nurse. (AR 1361-68.) Thus, the ALJ concluded that Plaintiff is not disabled at step four. (AR 1368.)

---

[2] The ALJ's decision has some typos and missing words. While the decision states, "The evidence of record does support a finding that the claimant's chronic liver disease meets listing 5.05," this appears to be a typo. (AR 1361.) Because the ALJ proceeded from step three to step four, she appears to have concluded that Plaintiff did *not* have an impairment that met or medically equaled the severity of listing 5.05. (AR 1359-61.) Plaintiff does not assert that the ALJ erred at step three or in analyzing his hepatitis C-related impairments.

Plaintiff requested review by the Appeals Council, which was denied. (AR 1346-49.) Plaintiff then sought review in this Court. (Dkt. No. 1.) In accordance with Civil Local Rule 16-5, the parties filed cross-motions for summary judgment. (Dkt. Nos. 18, 21.)

**B. Issues for Review**

    1. Is the ALJ's RFC finding supported by substantial evidence?

        a. Did the ALJ err in evaluating Plaintiff's employment records?

        b. Did the ALJ err in evaluating Plaintiff's activities of daily living?

        c. Did the ALJ err in evaluating Plaintiff's compliance with treatment?

        d. Did the vocational expert ("VE") use a complete hypothetical?

    2. Should the Court remand for payment of benefits or further proceedings?

## LEGAL STANDARD

A claimant is considered "disabled" under the Social Security Act if he meets two requirements. *See* 42 U.S.C. § 423(d); *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). First, the claimant must demonstrate "an inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). Second, the impairment or impairments must be severe enough that he is unable to do his previous work and cannot, based on his age, education, and work experience, "engage in any other kind of substantial gainful work which exists in the national economy." *Id.* § 423(d)(2)(A). To determine whether a claimant is disabled, an ALJ is required to employ a five-step sequential analysis, examining: (1) whether the claimant is engaging in "substantial gainful activity"; (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, upon determining the claimant's RFC, he can still do his "past relevant work"; and (5) whether the claimant "can make an adjustment to other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), *superseded by regulation on other grounds*; *see* 20 C.F.R. § 416.920(a).

**DISCUSSION**

**I.     The ALJ's RFC Finding**

At step four, to determine Plaintiff's RFC "the ALJ must consider whether the aggregate of [his] mental and physical impairments may so incapacitate him that he is unable to perform available work." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997). The ALJ will consider all evidence in the claimant's case record when making a disability determination. 20 C.F.R. §§ 404.1520(a)(3), 416.920(a)(3). "The ALJ is responsible for studying the record and resolving any conflicts or ambiguities in it." *Diedrich v. Berryhill*, 874 F.3d 634, 638 (9th Cir. 2017). Courts affirm the RFC determination if the ALJ applied the proper legal standard and the decision is supported by substantial evidence. *Bayliss v. Barnhart*, 427 F.3d 1211, 1217 (9th Cir. 2005). Plaintiff argues that the ALJ erred in rejecting Plaintiff's symptom testimony on the basis of his employment records, his activities of daily living, and his failure to comply with treatment. (*See* AR 1363 ("[Plaintiff's] statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence.").) He also argues that the ALJ relied on an incomplete hypothetical from the VE.

The Ninth Circuit has "established a two-step analysis for determining the extent to which a claimant's symptom testimony must be credited." *Trevizo v. Berryhill*, 871 F.3d 664, 678 (9th Cir. 2017). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment which could reasonably be expected to produce the pain or other symptoms alleged." *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007) (internal quotation marks and citations omitted). "Second, if the claimant meets this first test, and there is no evidence of malingering, the ALJ can reject the claimant's testimony about the severity of [his] symptoms only by offering specific, clear and convincing reasons for doing so." *Id.* (internal quotation marks and citations omitted). If the ALJ's assessment "is supported by substantial evidence in the record, [courts] may not engage in second-guessing." *See Thomas v. Barnhart*, 278 F.3d 947, 959 (9th Cir. 2002) (citations omitted).

Here, applying the two-step analysis, the ALJ determined that Plaintiff's "medically determinable impairments could reasonably be expected to cause the alleged symptoms,"

1   including what he alleged were his "most significant MS related symptoms[:] . . . mental fog,

2   difficulty with thought process, and fatigue." (AR 1363, 1362.) Because Plaintiff met the first

3   part of the test, and the ALJ pointed to no evidence of malingering, the ALJ was required to

4   provide "specific, clear and convincing reasons" for rejecting Plaintiff's testimony regarding the

5   severity of his symptoms. *Lingenfelter*, 504 F.3d at 1036.

### A.   Plaintiff's Employment Records

In its order for remand, the Court noted that Plaintiff's new evidence "may corroborate [his] subjective complaints of pain, which may cause the ALJ to find Plaintiff more credible." (AR 1454.) On remand, the ALJ found that Plaintiff's employment records did not make him more credible, because they indicated that: (1) his inability to multitask, cognitive issues, and fatigue were not the reason he left work, and (2) his reason for leaving work was mainly to care for his mother. (AR 1367.) These reasons are not specific, clear, and convincing because they are contradicted by the record.

First, the medical evidence in the record shows that Plaintiff consistently reported fatigue and mental fog as recurring symptoms. (AR 1545 (January 2008: "fatigue, difficulty multitasking"), 574 (February 2010: "[f]atigue is a big factor—2 'tired days' per week"), 578-79 (February 2011: "main problem is fatigue—does well on awakening at 6 AM; gets tired 11AM wants to sleep and continues to stay awake and may get his wind back"), 586 (December 2011: "difficult to work more than a 4 hour day here at home due to fatigue"), 553 (March 2013: difficulty with sustained concentration),[3] 319 (September 2013: fatigue), 593 (April 2014: "[e]xperiences fatigue . . . after walking 100' on flat [surface]").) Additionally, Plaintiff testified that his fatigue led to behavioral problems at work:

> I had issues with, essentially, multitasking and also it took increasingly longer amounts of time just to answer simple questions. It takes time to mentally process it. This became frustrating for people around me. . . . I wasn't really able to keep up with what was going on, and the result was I would feel tired—very tired and irritable, and it was just extremely hard to keep up with the demands of the job. I did have conflicts at work. Apparently, some of the

---

[3] The ALJ gave "little weight" to this opinion, from Dr. Sinaiko, because "there is no probative evidence of actual limitations with . . . sustained concentration." (AR 1365.)

United States District Court
Northern District of California

> clients thought I was too aggressive, too snappy, and that got back to my boss and said this was happening. It also caused conflicts—I wasn't able to handle the tasks assigned to me quickly enough to satisfy people.

(AR 1383-84.) The employment records illustrate such conflicts and also support Plaintiff's assertion that they were related to his MS symptoms. The records include a performance review from December 2005 in which he met expectations on almost all metrics and exceeded expectations on the remaining two. (AR 1516-17.) His supervisor wrote that Plaintiff was "very supportive of the staff" and "like[d] to minimize conflicts." (AR 1516-17.) But Plaintiff's October 2007 performance review was much more negative; the same supervisor noted "continued" "complaints" that Plaintiff was "rude and aggressive," "unprofessional, abrasive and dismissive," and "refused to take directions." (AR 1511-12.) That review was around the time—in late 2007 and early 2008—that Plaintiff began taking medical leaves for fatigue, difficulty multitasking, and other MS symptoms. (AR 1545-48.) Plaintiff then left work in April 2008. (AR 1511.)

Second, the employment records strengthen Plaintiff's earlier testimony that, although his mother needed care at the time he left work, it had also become "a real struggle to get through an eight hour day" due to fatigue and cognitive impairment. (AR 45-46.) Thus, the new evidence undercuts the ALJ's conclusion, in both decisions, that Plaintiff primarily left work to care for his mother. (AR 21, 25, 30, 1367.)

Overall, the ALJ's conclusion that the employment records show performance problems *un*related to Plaintiff's MS is not supported by substantial evidence. Plaintiff's testimony and the timeline of events in the record show that his performance issues were at least related to his fatigue and other MS symptoms, and no substantial evidence contradicts that showing. Accordingly, Plaintiff's employment records did not provide "specific, clear and convincing" reasons to reject his testimony regarding the severity of his symptoms. *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

### B. Plaintiff's Activities of Daily Living

"[T]he ALJ may use ordinary techniques of credibility evaluation," including assessing "inconsistencies either in the claimant's testimony or between the testimony and the claimant's

1    conduct . . . and whether the claimant engages in daily activities inconsistent with the alleged

2    symptoms." *Molina v. Astrue*, 674 F.3d 1104, 1112 (9th Cir. 2012). If the ALJ makes a "specific

3    finding" that the plaintiff "is able to spend a *substantial part* of [his] day engaged in pursuits

4    involving the performance of physical functions that are transferable to a work setting," that "may

5    be sufficient to discredit a claimant's [symptom] allegations." *Vertigan v. Halter*, 260 F.3d 1044,

6    1049 (9th Cir. 2001) (citation omitted).

7          The ALJ found that Plaintiff's activities of daily living discredited his testimony about the

8    "intensity, persistence and limiting effects" of his symptoms. (AR 1363.) The ALJ found that

9    because Plaintiff did "some exertional exercise involving yoga movements," did "quite a bit of

10   yard work," and "was otherwise active," the record did not support his alleged debilitating fatigue.

11   (AR 1368.) Plaintiff did engage in activities of daily living including driving for up to two hours,

12   taking a yoga movement class, dancing, playing guitar, putting up molding, doing yard work,

13   vacuuming, cleaning the floor, watching television, reading, and using the computer. (AR 1362,

14   1363, 1364, 1367.) However, his ability to perform these activities is not a specific, clear, and

15   convincing basis on which to discredit his symptom testimony. *See Lingenfelter v. Astrue*, 504

16   F.3d 1028, 1036 (9th Cir. 2007)

17         The ALJ did not make a "specific finding" that Plaintiff "is able to spend a *substantial part*

18   of [his] day" engaged in these activities. *Vertigan*, 260 F.3d at 1049. And, to the contrary,

19   Plaintiff reported that he had good days and bad days, and that even good days were interrupted by

20   fatigue. For example, in February 2010, Plaintiff reported that "[f]atigue is a big factor—2 'tired

21   days' per week." (AR 574.) In February 2011, he reported that the "main problem is fatigue—

22   does well on awakening at 6 AM; gets tired 11AM wants to sleep and continues to stay awake and

23   may get his wind back." (AR 578-79.) In December 2011, he reported that it was difficult to

24   work at home more than four hours a day without fatigue. (AR 586.) In a November 2013

25   questionnaire, Plaintiff summarized:

26           The [MS] presents me with an unpredictable day to day cycle of
        general weakness, fatigue, impaired hand coordination and on a bad
27           day of severe "mental fog" . . . . The fatigue is cyclic also. Some
        days I awaken more tired than when I went to bed. On these days I
28           tire out to the point of needing to lie down after 20 minutes of light

> housework. . . .
>
> [A]n average day does not exist for me but rather good days, midland and bad days. . . . Usually I can work 20 minutes, sit for 10 minutes, for two hours duration. The work usually stops due to lower extremity fatigue. . . . On midland days I do only what is necessary and spend time reading. . . . The bad days usually mean two naps in the day, along with the mindless TV due to problems of very low energy, back and abdominal paid and a very poor ability to concentrate. On either good days or bad, fatigue, muscle weakness and pain make me feel tired and mandate sleep periods.

(AR 239.) Thus, the record does not support a specific finding that Plaintiff was able to spend a substantial part of the day being active. *See Diedrich v. Berryhill*, 874 F.3d 634, 642–43 (9th Cir. 2017) ("The ALJ took note of certain daily activities that [plaintiff] could perform, such as bathing, cooking, taking care of her cat, chores around the house, shopping, paying bills, and using a checkbook. But the ALJ ignored other evidence showing the difficulties [plaintiff] faced in everyday life."); *Garrison v. Colvin*, 759 F.3d 995, 1016 (9th Cir. 2014) ("The ability to talk on the phone, prepare meals once or twice a day, occasionally clean one's room, and, with significant assistance, care for one's daughter, all while taking frequent hours-long rests, avoiding any heavy lifting, and lying in bed most of the day, is consistent with the pain that [plaintiff] described in her testimony.").

Accordingly, Plaintiff's activities of daily living were not a convincing reason to discredit his testimony about his fatigue and other MS symptoms. *See Vertigan*, 260 F.3d at 1050 ("[T]he the mere fact that a plaintiff has carried on certain daily activities, such as grocery shopping, driving a car, or limited walking for exercise, does not in any way detract from [his] credibility as to [his] overall disability.").

### C. Plaintiff's Alleged Failure to Comply with Treatment

"In some circumstances, a failure to seek treatment or a failure to follow a prescribed treatment is properly used as evidence supporting a conclusion that the claimant is not credible in describing his or her symptoms." *Orn v. Astrue*, 495 F.3d 625, 637 (9th Cir. 2007). "[T]he individual's statements may be less credible if the level or frequency of treatment is inconsistent with the level of complaints, or if the medical reports or records show that the individual is not

following the treatment as prescribed and there are no good reasons for this failure." *Molina v. Astrue*, 674 F.3d 1104, 1113 (9th Cir. 2012).

The ALJ found that, "[d]espite the alleged limitations due to MS," Plaintiff "failed to comply with taking prescribed medications" and "declined medication for MS even as of 2015." (AR 1368, 1363.) The ALJ found that such failure discredited Plaintiff's testimony about the severity of his limitations due to MS. *See Molina*, 674 F.3d at 1114 n.6 (distinguishing between failure to comply with treatment for purposes of credibility and for purposes of denying benefits to a claimant who the ALJ has already determined is disabled). This reason for discrediting Plaintiff's testimony is not supported by substantial evidence.

First, it is relevant that Plaintiff's most significant MS symptoms were fatigue and mental fog, as distinct from pain. (AR 1362.) The probative value of the failure to comply with treatment depends on the asserted symptoms:

> [I]f a claimant complains about disabling pain but fails to seek treatment, or fails to follow prescribed treatment, for the pain, . . . such failure may be probative of credibility, because a person's normal reaction is to seek relief from pain, and because modern medicine is often successful in providing some relief. But in the case of impairments where the stimulus to seek relief is less pronounced, and where medical treatment is very unlikely to be successful, [that] approach to credibility makes little sense.

*Orn*, 495 F.3d at 638 (citation omitted). The ALJ did not explain how the instinct to seek relief from fatigue, even debilitating fatigue, compares as a matter of law to the instinct to seek relief from pain. Accordingly, any failure on Plaintiff's part to seek relief from fatigue falls short of a specific, clear, and convincing reason to discredit his testimony about that fatigue.

Second, the record does not indicate that Plaintiff failed to comply with a course of treatment that was actually prescribed. The ALJ based her conclusion on the following portions of the record: (1) treating physician Dr. Artz's patient history from September 2015; (2) consulting physician Dr. Benrazavi's exam from November 2013; (3) treating physician Dr. Marwaha's exam from December 2016; and (4) treating physician Dr. Bennett's exam from January 2014. (*See* AR 1363, 1365, 1368.) Dr. Artz wrote:

> 1988 diagnosed [with MS]. . . . Never took any medication

9

> (interferons). He has described having several episodes over the last 18 years. . . . He has not wanted to take any interferons [or] other immune modulators due to concerns for cancer and side effects.
> . . .
> We reviewed use of medication which can be used for M.S. [i]ncluding copaxone, avonex, rebif, tysabari, rituxan and the oral agents given his cancers in the past. . . . [He] does not want to take any M.S. [t]ype medication at this time.

(AR 1226, 1228.) This evidence indicates that Dr. Artz discussed treatment options with Plaintiff, but does not establish that he advised any particular treatments or medications. *Cf. Molina*, 674 F.3d at 1114 (holding that ALJ did not err in considering failure to comply with treatment, where "record was filled with evidence that despite [primary care provider's] repeated efforts to persuade [claimant] to seek psychiatric treatment for her anxiety disorder, she failed to do so until after she applied for disability benefits"). Similarly, Dr. Benrazavi noted that Plaintiff "has refused medication or treatment for [MS] in the past and he continues to do so." (AR 539.) Dr. Marwaha made no mention of a failure to comply with treatment. (AR 1819; *see* AR 1368 (ALJ decision citing Exhibit 18F at 263).) Finally, Dr. Bennett's letter stated simply, "[Plaintiff] is on no prescription medications." (AR 555.)

Plaintiff testified that he had concerns with immune system modulators because of a chronic infection from a contaminated pacemaker suture, dating to 1995. (AR 1387, 1362.) The medical evidence supports that Plaintiff had an infection at one time from the pacemaker issue. (AR 327, 344.) Plaintiff testified that the infection was ongoing because he still had night sweats, intermittent fevers, pain, and elevated white blood cell counts and C reactive protein, (AR 1387-88); however, the medical evidence does not indicate that the infection was ongoing, (AR 1368). Plaintiff testified that his past diagnoses of melanoma and bladder cancer made him hesitant to take immune system modulators: "[I]t may help the MS, but the infection will flourish, get worse, and . . . [o]nce that infection gets going, there's nothing there to fight it." (AR 1389.) He also testified that his doctors said his concerns were "legitimate" and that they "all made a point of saying none of these medications will make you better. They will, at best, keep you as you are." (AR 64, 65-66.)

In sum, while Plaintiff clearly had concerns about possible treatments, the record does not "show that [he] is not following the treatment as prescribed and there are no good reasons for this

10

failure." *Molina*, 674 F.3d at 1113. *Cf. Orn*, 495 F.3d at 637 ("This [patient discharge instruction] sheet . . . can hardly be described as a prescribed treatment. 'Prescribed treatment' is a term of art."). Rather, the record shows that Plaintiff did not take medications to treat his MS. That limited finding is not a specific, clear, and convincing reason to discredit Plaintiff's symptom testimony. Given that Plaintiff explained why he did not want to take medication and that nothing in the record shows medication would have alleviated his fatigue, the ALJ's conclusion that Plaintiff failed to comply with treatment is not supported by substantial evidence. *See Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir. 2007).

### D.     VE's Testimony

The RFC analysis "must consider whether the aggregate of [claimant's] mental and physical impairments may so incapacitate him that he is unable to perform available work. To make that determination the ALJ may elicit testimony from a [VE], but the hypothetical posed to the [VE] must consider all of the claimant's limitations." *Light v. Soc. Sec. Admin.*, 119 F.3d 789, 793 (9th Cir. 1997) (internal quotation marks and citations omitted). "While the ALJ need not include all claimed impairments in [her] hypotheticals, [she] must make specific findings explaining [her] rationale for disbelieving any of the claimant's subjective complaints not included in the hypothetical." *Id.* (citation omitted). The ALJ was required to consider Plaintiff's medically determinable impairments, both those she determined were severe (degenerative disc disease of the lumbar spine, COPD, and MS) and those she determined were not severe (diverticulitis, irritable bowel syndrome, tinnitus, hearing loss, urethral stricture, tobacco smoker, history of bladder cancer and melanoma, and hepatitis C). (AR 1358-59); *see Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (noting that if claimant has a severe medically determinable impairment at step two, "all medically determinable impairments must be considered in the remaining steps of the sequential analysis").

Plaintiff's past relevant work was as an office nurse, which is generally performed at the exertionally light level and was actually performed by Plaintiff at the sedentary level, and as a private duty nurse, which is generally performed and was actually performed by Plaintiff at the exertionally medium level. (AR 1395, 1368.) The VE testified that there were no transferrable

1  skills to the light or sedentary levels that would require very little to no vocational adjustment.

2  (AR 1396.)  The ALJ posed the following hypotheticals to the VE:

3      1. Plaintiff's age, education, and past relevant work; limited to light work; can frequently
4  climb ramps or stairs; can never climb ladders, ropes, or scaffolds; can frequently balance, stoop,
5  kneel, or crouch, and occasionally crawl; can frequently handle, finger, and feel with the left upper
6  extremity; must avoid concentrated exposure to extreme cold, extreme heat, and humidity; and
7  must avoid even moderate exposure to unprotected heights and moving mechanical parts.  (AR
8  1396-97.)  The VE testified that the hypothetical individual could perform work as an office nurse,
9  both as generally performed (light) and actually performed (sedentary).  (AR 1397.)

10      2. Same as the first hypothetical, except limited to sedentary work and never able to be
11  exposed to unprotected heights.  (AR 1397-98.)  The VE testified that the hypothetical individual
12  could perform work as an office nurse only as actually performed (sedentary), not as generally
13  performed (light).  (AR 1398.)

14      3. Same as the second hypothetical, except with the additional limitation of performing
15  simple, routine tasks due to fatigue.  (AR 1398.)  The VE testified that the hypothetical individual
16  could not perform work as an office nurse.  (AR 1398-99.)

17  In the decision after the hearing, the ALJ reported that the VE testified that Plaintiff had
18  the RFC to perform work as an office nurse.  (AR 1368.)  Thus, she relied on the VE's testimony
19  in response to the first hypothetical.  (*See* AR 1361 (describing Plaintiff's RFC).)  The first
20  hypothetical was incomplete because it should have included Plaintiff's subjective complaints of
21  fatigue; as explained above, the ALJ erred in discrediting Plaintiff's symptom testimony based on
22  his reasons for leaving work, his activities of daily living, and his failure to comply with treatment.
23  Accordingly, the ALJ erred in relying on the VE's testimony in response to the first hypothetical.
24  *See Taylor v. Comm'r of Soc. Sec.*, 659 F.3d 1228, 1235 (9th Cir. 2011) ("Because neither the
25  hypothetical nor the answer properly set forth all of [claimant's] impairments, the [VE's]
26  testimony cannot constitute substantial evidence to support the ALJ's findings." (citation
27  omitted)).

28                                      * * *

Because the ALJ's adverse credibility finding as to the intensity, persistence, and limiting effects of Plaintiff's symptoms is not supported by substantial evidence, the decision cannot stand. The ALJ's errors here go to the heart of the disability determination and are not harmless. *See Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1099 (9th Cir. 2014) ("An error is harmless if it is inconsequential to the ultimate nondisability determination, or if the agency's path may reasonably be discerned . . . ." (internal quotation marks and citations omitted)); *Stout v. Comm'r, Soc. Sec. Admin.*, 454 F.3d 1050, 1056 (9th Cir. 2006) ("[A] reviewing court cannot consider the error harmless unless it can confidently conclude that no reasonable ALJ, when fully crediting the testimony, could have reached a different disability determination.").

## II. Remand for Benefits or Further Proceedings

Plaintiff asks the Court to remand the case for the payment of benefits, or alternatively, for further proceedings. When courts reverse an ALJ's decision, "the proper course, except in rare circumstances, is to remand for additional investigation or explanation." *Benecke v. Barnhart,* 379 F.3d 587, 595 (9th. Cir. 2004) (citations omitted). A remand for award of benefits is proper, however, "where (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand." *Revels v. Berryhill,* 874 F.3d 648, 668 (9th. Cir. 2017) (citation omitted).

Each requirement is satisfied, and remand for the calculation and award of benefits is proper. First, the record is fully developed after two rounds of administrative hearings. It includes medical records from 2003 to 2019, a consultative evaluation by Dr. Benrazavi, (AR 535-40), two RFC assessments, (AR 80-88, 90-104), Plaintiff's testimony, (AR 42-73, 1381-89), and other evidence. "Most importantly," the VE testified in response to the ALJ's third hypothetical, which properly included Plaintiff's subjective complaints of fatigue, that an individual with those limitations could not perform work as an office nurse. *Revels*, 874 F.3d at 669; *see Benecke*, 379 F.3d at 594–95; (AR 1398-99.) Thus, "the record as a whole is free from

13

conflicts, ambiguities, or gaps, [and] all factual issues have been resolved." *Treichler v. Comm'r of Soc. Sec. Admin.*, 775 F.3d 1090, 1103–04 (9th Cir. 2014).

Second, for the reasons explained above the ALJ failed to provide legally sufficient reasons for rejecting Plaintiff's testimony as to his MS-related symptoms.

Third and finally, if Plaintiff's testimony were credited as true, that would establish that Plaintiff is disabled because the VE testified that someone with Plaintiff's combination of limitations could not work as an office nurse and that Plaintiff had no transferrable skills. (AR 1398-99, 1396); *see Revels*, 874 F.3d at 668–69. As in *Benecke*,

> The ALJ's determination that [claimant] retains functional capacity to perform sedentary or light work was in error; because the record, including the limited [VE] testimony, clearly establishes that [claimant] cannot perform a sedentary job or any other substantial gainful work that exists in the national economy, we need not return the case to the ALJ to make a residual functional capacity determination a second [or, here, third] time.

379 F.3d at 595.

Accordingly, remand for the calculation and award of benefits is warranted.

## CONCLUSION

For the reasons stated above, the Court GRANTS Plaintiff's motion for summary judgment, DENIES Defendant's cross-motion, and REMANDS to the Commissioner of Social Security for calculation and award of benefits.

This Order disposes of Docket Nos. 18 and 21.

**IT IS SO ORDERED.**

Dated: October 20, 2021

JACQUELINE SCOTT CORLEY
United States Magistrate Judge